# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHIRLEY WOODARD | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CHICAGO BOARD OF | ) |
| EDUCATION, formerly known as | ) |
| the Chicago School Reform Board of | ) |
| Trustees, and LARRY YOUNG | ) |
| | ) |
| Defendants. | ) |

Case No. **00C 5515**

Judge JUDGE JOHN W DARRAH

Magistrate Judge

JURY DEMAND

MAGISTRATE JUDGE ROSEMOND

**DOCKETED**

SEP 1 1 2000

FILED-ED4
00 SEP -7
CLERK
U.S. DISTRICT

## COMPLAINT

Now comes the Plaintiff, Shirley Woodard ("Woodard"), by and through her attorney

Denise M. Mercherson, and complaining of Defendants, Chicago Board of Education, formerly

known as the Chicago School Reform Board of Trustees and Larry Young and states as follows:

### Parties

1.      Plaintiff is, and at all times relevant to this Complaint has been a resident of the

State of Illinois.

2.      Defendant, Chicago Board of Education, formerly known as the Chicago School

Reform Board of Trustees, organized under the laws of the State of Illinois and is responsible for

the operation of the public schools within the City of Chicago, Illinois.

3.      Defendant, Larry Young was at all times relevant a duly authorized community

representative of the South Loop School's Local School Council.

1

### Jurisdiction and Venue

4.     This action is brought pursuant to the Fourteenth Amendment to the Constitution of the United States and pursuant to 42 U.S.C. Section 1983.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and the doctrine of pendent jurisdiction.  Plaintiff, Woodard does not have an adequate state law remedy.  The state law breach of contract is not an adequate remedy.

5.     Venue is properly placed in this Court pursuant to 28 U.S.C. Section 1391(b)(2), as the cause of action arose in this district.

### Nature of the Action

6.     This action arises out of the efforts of the Board of Education to deprive Woodard, without due process of law, of her property and liberty rights, pursuant to her employment contract with the South Loop School Local School Council and the Board of Education to serve as the Principal of South Loop School in Chicago, Illinois commencing November 2, 1998 and ending November 2, 2002. The Board of Education has failed or refused to give Woodard notice of charges; a fair, prompt hearing; and due process of law.

### COUNT I

### Deprivation of Civil Rights

7.     On or about October 28, 1998, Woodard entered into a Uniform Principal Performance Contract with the South Loop Local School Council as agent of the Board of the Education for Woodard to serve as the Principal of South Loop School ("the Contract"). A copy of the Contract is attached as Exhibit A. South Loop School is located at 1212 S. Plymouth Court,  Chicago, Illinois 60605.

2

8.    The Contract provides that Woodard was to be employed as the Principal of the South Loop School commencing November 2, 1998 and ending November 2, 2002.

9.    The contract provides in part that it shall constitute the entire agreement and no additions, deletions or modifications may be made to the Contract during its term unless signed by the Board of Education, Local School Council and the Principal.

10.    By letter dated January 27, 2000 to Woodard from Blondean Y. Davis, Deputy Chief Education Officer of the Board of Education, effective January 26, 2000 Woodard was "temporarily assigned" to the Office of Schools and Regions pending the results of an investigation. A copy is hereby attached as Exhibit B.

11.    By letter dated February 4, 2000 to William Quinlan, one of Woodard's attorneys, James G. Ciesil, Senior Assistant Attorney of the Board's Law Department directed Woodard on February 7, 2000 to stay home until further notice. A copy is hereby attached as Exhibit C.

12.    Defendant has failed to report to the Plaintiff regarding the results of the investigation or commence any charges against her.

13.    At all times relevant to this Complaint, the powers, duties and responsibilities of the Board of Education were governed by the Illinois School Code in general and in particular by 105 ILCS 5/34-85. The Board of Education purported to act under color of state law.

14.    The Contract gives Woodard a protect able property and liberty interest within the meaning of the Fourteenth Amendment of the United States Constitution in her continued employment as the Principal of the South Loop School and the action of the Board of Education, its employees and agents has caused Woodard to suffer damages which cannot be recompensed solely through money.

15. The conduct of the Board of Education, without just cause and due process. The constitutional injury under the Fourteenth Amendment to the United States Constitution and under the Section 1 of the Civil Rights Act of 1871, 42 U.S.C. Section 1983, the failure to give Woodard notice of charges, a fair, prompt hearing, and due process, was caused by the Board of Education, its employee and agents, acting with final policy making authority.

16. The Board of Education has a policy ,custom or usage of failing to provide due process to reassigned administrators such as Woodard. This practice includes reassigning administrators for long periods of time without notice of charges; fair,  prompt hearing; and due process of law.

WHEREFORE, Plaintiff, Shirley Woodard, respectfully requests that this Court enter judgment in her favor against, Defendant, Chicago Board of Education:

        a. Declaring that the Contract between Woodard and the Board of Education shall be in full force and effect and that Woodard shall be reinstated as the Principal of South Loop School;

        b. Enjoin the Board of Education from reassigning Woodard from her position as Principal of South Loop School;

        c. Award Woodard compensatory damages ;

        d. Award Woodard costs and attorneys' fees; and

        e. Grant Woodard such other and further relief as this Court may deem just and proper.

4

## COUNT II

### <u>Breach of Contract</u>

1-16    Woodard realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 16 of Count 1 as paragraphs 1 through 16 of this Count II.

17.    The Board of Education, its employee, and agents have breached the Contract of Woodard to be employed as the Principal of South Loop School.

18.    Woodard is willing, ready and able to perform her duties as the Principal of South Loop School.

19.    Woodard has been damaged by the repudiation of the Contract by the Board of Education.

WHEREFORE, Plaintiff, Shirley Woodard, respectfully requests that this Court award judgment in her favor against Defendant, Chicago Board of Education formerly known as the Chicago School Reform Board of Trustees:

      a.    Award Woodard compensatory damages in an amount to be determined at trial;

      b.    Award Woodard costs; and

      c.    Grant Woodard such other and further relief as this Court deems just and proper.

5

## Count III

### Tortious Interference with Contractual Relations
### against Defendant Young

1-19    Woodard realleges and incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 19 of Counts I and II as paragraphs 1 through 19 of this Count III.

20.    The Contract which is fully valid and enforceable  provides that Woodard was to be employed as the Principal of the South Loop School commencing on November 2, 1998 and ending November 2, 2002.

21.    Defendant Larry Young was at all times relevant a member of the South Loop School Local School Council. Young objected to the Local School Council's decision to award the Contract to Woodard.

22.    Defendant Young falsely accused Woodard of misappropriation of South Loop School funds.

23.    As a result of Defendant's Young's false accusations that Woodard had misappropriated school funds, Defendant Board of Education was induced to remove her from her position as Principal of South Loop School without due process.

WHEREFORE,  Plaintiff,  Shirley Woodard respectfully requests that this Court enter judgment in her favor and against Defendant,  Larry Young:

a.    Declaring that the Contract between Woodard and the Board of Education shall be in full force and effect and that Woodard shall be reinstated as the Principal of South Loop School;

6

b.   Enjoining Larry Young from further interference with Woodard's

contractual rights;

c.   Awarding Woodard compensatory damages in amount to be determined at

trial; and

d.   Granting Woodard such other relief and further relief as this Court deems

just and proper.


Respectfully submitted,


SHIRLEY WOODARD

By: _Denise M. Mercherson_

One of Her Attorneys


Denise M. Mercherson
330 S. Wells
Suite 1020
Chicago, Illinois 60606
312/922-1446

97-0226-RS10

# CHICAGO PUBLIC SCHOOLS
## DEPARTMENT OF SCHOOL AND COMMUNITY RELATIONS

> **Important Note:** This form must accompany all Local School Council
> official actions pertaining to the principalship at the school.

## Certification of Principal Selection by Local School Council
### (please type or print)

School: _SOUTH LOOP_ , Region: _3_

Candidate Name: _SHIRLEY WOODARD_ Social Security #: _354 - 36 - 9954_

Classifications for Contractual Principal: _✓_ New _____ Renewal

We, the members of the Local School Council, hereby certify that at our meeting of

_10/28/98_ , we voted* _7_ to _3_ select _SHIRLEY WOODARD_

Candidate

*(please refer to Guidelines for Principal Evaluation and Selection of legal number of votes necessary.)

The candidate is currently a(n) _✓_ employee _____ non employee of the CPS
_____ Assistant Principal at above school

Name of departing principal _*Dr. Anthony Biegler_ _DOROTHY JARRETT_ Social Security #: _354 - 62 - 7157_
(acting principal)

Effective Departure Date: _*Aug. 14, 1998_

As required by law, a quorum was present, 6 for elementary schools not including the principal
or 7 for high schools not including the principal and students, and further that we have complied
with the Open Meeting Act providing for public notice, and an agenda with at least 48 hours
written notice to each member.

We further certify that the principal (and student if a high school) did not vote in the selection
process and was not counted for the purpose of determining whether a quorum existed at the
above meeting.

Signatures of Local School Council Members: Date: _10 - 28 - 98_

1. _Shirl S. Gant LSC_        6. _Latina Parker_
2. _Natasha Williams_         7. _Rose M Ballard_
3. _Cindy Taylor_             8. _____
4. _Gail D. Dozier_           9. _signing under duress_
5. _Beverly 3ill_             10. _Craig Hudit_

EXHIBIT
A

97-0226-RS10 **UNIFORM PRINCIPAL'S PERFORMANCE CONTRACT**

This Agreement ("Agreement") is made and entered this _28th_ day of _October_ by and between the Board of Education of the City of Chicago ("Board of Education"), the Local School Council at _South Loop Elementary_ School ("Local School Council") and _Shirley J. Woodard_ ("Principal"). This Agreement sets forth the rights and obligations of the parties with respect to the employment of the Principal at _South Loop Elementary_ School ("the Attendance Center").

This Agreement is made pursuant to the provisions of the Illinois School Code, which are incorporated herein by this reference...

In consideration of the following promises, the parties agree as follows:

I. TERM

Principal is hereby employed by the Board of Education and agrees to serve for four years as the Principal at the Attendance Center commencing _November 2, 1998_ and ending _November 2, 2002_, unless this Agreement is terminated earlier as provided in Section V.

II. DUTIES OF PRINCIPAL

The Principal shall be the chief executive/operating officer of the Attendance Center. The Principal's duties shall include, but not be limited to, the following:

   a) the Principal shall supervise the educational operation of the Attendance Center and shall assume administrative responsibility and instructional leadership, in accordance with the Rules, Policies and Procedures of the Board of Education, for the planning, operation and evaluation of the educational program of the Attendance Center;

   b) the Principal's primary responsibility is the improvement of instruction at the Attendance Center;

   c) the Principal shall develop a Local School Improvement Plan ("Plan"), pursuant to the Illinois School Code, 105 ILCS 5/34-2.4, for the Attendance Center in consultation with the Local School Council, all categories of school staff, parents and community residents. The Principal shall then submit said Plan to the Local School Council for approval or disapproval;

(2/26/97)

97-0226-RS10

d) after a Plan has been approved by the Local School Council, the Principal shall be responsible for the implementation of the approved Plan;

e) the Principal, with the assistance of the Professional Personnel Advisory Committee, shall develop the specific methods and contents of the school curriculum within the Board of Education's system-wide curriculum standards and objectives and the requirements of the Plan;

f) the Principal shall develop an expenditure plan ("expenditure plan"), pursuant to the Illinois School Code, with respect to funds allocated and distributed to the Attendance Center by the Board of Education. The expenditure plan shall be developed in consultation with the Local School Council, the Professional Personnel Advisory Committee of the Attendance Center and all other school personnel. The Principal shall submit said expenditure plan annually to the Local School Council for approval or disapproval;

g) after an expenditure plan has been approved by the Local School Council, the Principal shall be responsible for the implementation of the approved expenditure plan;

h) unless prohibited by law or by Rule of the Board of Education, the Principal shall provide to the Local School Council copies of all internal audits and any other pertinent information generated by any audits or reviews of the programs and operations of the Attendance Center;

i) the Principal shall direct, supervise, evaluate, and suspend with or without pay or otherwise discipline all teachers, assistant principals, and other employees assigned to the Attendance Center in accordance with Board of Education Rules, Policies and Procedures and consistent with applicable collective bargaining agreements;

j) the Principal shall fill positions by appointment, and shall submit recommendations to the General Superintendent or Chief Executive Officer concerning the appointment, dismissal, retention, promotion, and assignment of all personnel assigned to the Attendance Center, as provided in 105 ILCS 5/34-8.1;

k) the Principal shall attend academies or other training sessions mandated by the Board of Education and the Illinois State Board of Education;

(2/26/97)

97-0226-RS10

l)    the Principal shall perform faithfully his/her duties and obligations as a member of the Local School Council of the Attendance Center;

m)    the Principal shall endeavor to maintain a positive education and learning climate at the Attendance Center;

n)    the Principal shall endeavor to establish clear lines of communication regarding school goals, accomplishments, practices and policies with the Local School Council, parents and teachers, and, unless prohibited by law or by Rule of the Board of Education, shall provide to the Local School Council information necessary for the Local School Council to perform its duties under the School Code;

o)    the Principal shall fulfill other obligations imposed upon the Principal by:   the Illinois School Code; other applicable state and federal laws; Rules, Policies and Procedures of the Board of Education; collective bargaining agreements; the desegregation consent decree; and other court decisions, decrees and settlements entered into by the Board of Education;

p)    the Principal may, in accordance with Board Rules and Procedures including, but not limited to its Rule concerning conference leave, seek professional growth through collegial activities, attendance at professional meetings and the pursuit of further education.

     Failure to perform the duties set forth in this Sect'... may result in disciplinary action pursuant to Board Rules, Policies and Procedures, and may constitute a material breach of this Agreement and cause for termination.

III.   COMPENSATION

     The Board of Education shall pay salary and provide benefits to the Principal in accordance with the Administrative Compensation Plan and the Rules, Policies and Procedures of the Board of Education, including all benefits for which full-time, regularly appointed certificated employees are eligible.

IV.   EVALUATION

   A.   Evaluation By Local School Council

     (a)   The Local School Council shall annually evaluate the Principal.   The evaluation shall be in writing in a form

3                                  (2/26/97)

97-0226-RS10

prescribed by the Board of Education, which shall include the following criteria:

1) the Principal's fulfillment of his/her duties under this Agreement including the duties specifically identified in Section II of this Agreement;

2) such other performance factors as are mutually agreed upon by the Principal, the Board of Education and the Attendance Center's Local School Council in accordance with Section XI of this Agreement.

(b) The Local School Council's evaluation also shall take into consideration the annual evaluation of the Principal conducted by the General Superintendent or Chief Executive Officer.

(c) The Principal and the Local School Council shall meet at least once as the Local School Council gathers information to prepare its annual evaluation. The Local School Council shall send its signed, written evaluation, in the form prescribed by the Board of Education, to the Principal no later than May 1 during each year of this Agreement;

(d) Within 30 days of the Principal's receipt of the Local School Council's signed, written evaluation, the Principal and the Local School Council may meet, upon request of either the Principal or the Local School Council, in executive session, to discuss the contents of the evaluation. As a result of that meeting, the Local School Council may, but is not obligated to, revise its written evaluation. The Local School Council shall send a copy of its final evaluation to the Principal, with a copy to the General Superintendent or Chief Executive Officer, no later than June 15 during each year of this Agreement.

B. Evaluation By General Superintendent
   or Chief Executive Officer

(a) The General Superintendent or Chief Executive Officer shall, in consultation with the Local School Council, conduct an evaluation of the Principal. The evaluation shall be in writing in a form prescribed by, and pursuant to guidelines promulgated by, the Board of Education.

4

(2/26/97)

-0226-RS10

(b)  The evaluation conducted by the General Superintendent or Chief Executive Officer shall be conducted annually, and shall be sent to the Principal and Local School Council.

(c)  No evaluation pursuant to this Section shall be conducted until the Principal has been employed at the Attendance Center pursuant to this Agreement for at least one school semester.

## CONTRACT TERMINATION

This Agreement may be terminated by the Board of Education before piration of the term stated in Section II of this Agreement for any one : the following reasons or by any one of the following methods:

(a)  written agreement of the Board of Education, the Local School Council and the Principal;

(b)  removal of the Principal for cause pursuant to 105 ILCS 5/34-85;

(c)  closure of the attendance center;

(d)  death, resignation or retirement of the Principal;

(e)  misrepresentation referred to in section IX of this Agreement;

(f)  revocation or suspension of the requisite certification to serve as Principal in the Chicago Public Schools;

(g)  removal, reassignment, layoff or dismissal of the Principal to the extent permitted by 105 ILCS 5/34-8.3 and 105 ILCS 5/34-8.4 of the School Code.

## I.  EXPIRATION

Unless terminated earlier, this Agreement, including and otwithstanding the procedures set forth herein, shall expire at the end f its stated term and shall not grant or create any contractual rights r other expectancy of continued employment beyond the term of this greement, except as indicated and solely to the extent provided in ection VII of this Agreement.

## II.  RENEWAL AND NON-RENEWAL

(a)  The Local School Council shall decide whether to renew this greement with the Principal. The Local School Council shall notify the rincipal of its decision regarding whether to renew this Agreement with

(2/26/97)

97-0226-RS10

the Principal in writing no later than February 1 of the calendar year in which this Agreement expires or, if the Principal's term expires on a date other than June 30, 150 days before expiration of this Agreement. Notice of the Local School Council's decision shall be made by personal delivery to the Principal or by registered or certified mail, and shall be deemed to have occurred on the date the Principal receives the written notice from the Local School Council. The Principal shall have no right to demand that the Local School Council make this decision earlier than the date set forth in this Section. In the event that the Local School Council fails to provide written notice of its decision in the manner set forth above by February 1 or, if the Principal's term expires on a date other than June 30, 150 days before expiration of this Agreement, then the Board may extend this Agreement for an additional year or appoint an interim principal at the Attendance Center until the Local School Council selects a new Principal to serve.

(b) In the event that the Local School Council decides not to renew this Agreement with the Principal, the Local School Council shall, if requested by the Principal, provide in writing the reasons for its decision not to renew. The written reasons shall be provided to the Principal, with a copy to the General Superintendent or Chief Executive Officer, no later than February 22 of the calendar year in which this Agreement expires or, if the Principal's term expires on a date other than June 30, 128 days before expiration of this Agreement.

(c) The Local School Council shall have no right to renew this Agreement with the Principal if the Principal fails to meet any requirement which is established or imposed by the Board of Education in accordance with 105 ILCS 5/34-8.1 as a condition of the continued employment of the Principal or of the renewal of this Agreement with the Principal.

(d) In the event that the Local School Council decides to renew this Agreement at the conclusion of the term stated in Section II of this Agreement, the Board of Education, the Local School Council and the Principal shall enter into a new Agreement for a term of four years pursuant to 105 ILCS 5/34-2.3 upon approval by the Board of Education of employment of the Principal.

(e) In the event that this Agreement is not renewed, the Local School Council shall be free to select another principal to serve under a four year performance contract as principal of the Attendance Center.

(f) Pursuant to 105 ILCS 5/34-8.1, in the event that this Agreement is not renewed, the Principal's employment as a principal shall terminate upon the expiration of this Agreement, and he/she shall not be reinstated to any former position which he/she previously held with the Board of Education. However, the failure of the Local School Council to renew this Agreement with the Principal shall not limit the Principal

6                                        (2/26/97)

97-0226-RS10

rom seeking and receiving other employment with the Board of Education
ased upon his/her experience and valid certifications and, if otherwise
ualified under the Illinois School Code, his/her name shall be placed
n appropriate eligibility lists which the Board maintains for teaching
ositions.

(g)    In the event that this Agreement is not renewed and the
rincipal does not retire or is not otherwise employed by the Board of
ducation after expiration of the term of this Agreement, the Principal
hall be eligible to continue to receive his or her previously provided
evel of health insurance benefits for a period of 90 days following
xpiration of the term of this Agreement.  Nothing in this subsection is
ntended to limit or otherwise impact the Principal's rights under COBRA
r any other federal or state law concerning insurance.

## III. SEVERABILITY

The provisions of this Agreement shall be considered severable and
ndependent.  If any provision of this Agreement is held invalid or
nenforceable, the remaining provisions shall not be affected.

## X.   REPRESENTATIONS

(a)    The person signing this Agreement as Principal represents that
ne/she currently possesses the requisite certification to serve as
rincipal in the Chicago Public Schools, and that he/she meets any and
ll requirements for the employment or continued employment of such
erson as Principal which are established or imposed by the Board of
ducation in accordance with 105 ILCS 5/34-8.1.    In the event that the
oard of Education subsequently finds that such person does not possess
he requisite certification to serve as a Principal in the Chicago Public
chool System, or otherwise fails to meet any requirement established or
mposed by the Board of Education  in accordance with 105 ILCS 5/34-8.1,
his Agreement shall be deemed null and void, and the employment of the
erson signing this Agreement as Principal shall be terminated.

(b)    If the person signing this Agreement as Principal is not an
mployee of the  Board of Education at the time of signing, he/she
epresents: (1) that the information set forth in his/her employment
pplication is true and accurate; and (2) that he/she has never been
onvicted of any of the enumerated criminal offenses set forth in  105
ILCS 5/34-18.5 of the Illinois School Code.  In the event that the Board
of Education subsequently finds: (1) that the information set forth in
nis/her employment application is not true and accurate; or (2) that
ne/she has been convicted of any of the enumerated criminal offenses set
forth in  105 ILCS 5/34-18.5  of the Illinois School Code, this Agreement
shall be deemed null and void, and the employment of the person signing
this Agreement as Principal shall be terminated.

7                              (2/26/97)

97-0226-RS10

X.  APPLICABLE LAW

    This Agreement shall be interpreted and governed by the laws of the
State of Illinois.

XI. ENTIRE AGREEMENT

    (a)  This Agreement shall constitute the entire Uniform Principal's
Performance Contract, and no additions, deletions or modifications may
be made to this Agreement during its term unless made in writing and
signed by the Board of Education, the Local School Council and the
Principal.  However, notwithstanding anything in this Agreement to the
contrary this Agreement  may be modified upon renewal pursuant to 105
ILCS 5/34-8.1.  Also, notwithstanding anything in this Agreement to the
contrary, the Board of Education may establish or impose requirements in
accordance with 105 ILCS 5/34-8.1 as conditions of the execution of this
Agreement, and may establish or impose requirements in accordance with
105 ILCS 5/34-8.1 as conditions of the renewal of this Agreement.  This
Agreement  supersedes  all  prior  agreements,  arrangements  and
communications between the parties dealing with the subject matter
hereof, whether oral or written.

    (b)  Nothing in subsection XI(a) above shall prohibit the Local
School Council from negotiating additional criteria pursuant to  105 ILCS
5/34-2.3 of the Illinois School Code.  Such additional criteria shall not
discriminate on the basis of race, sex, creed, color or disability
unrelated to ability to perform, and shall not be inconsistent with this
Uniform Principal's Performance Contract, with other provisions of the
Illinois School Code governing the authority and responsibility of
principals, with Board of Education Rules, Policies or Procedures, or
with court decisions or settlements affecting the Board of Education.
Any additional criteria are subject to approval by the Board of
Education's legal counsel, working in consultation with the organization
representing  Principals  (currently  the  Chicago  Principals  And
Administrators  Association),  for  purposes  of  determining  such
consistency, and such criteria shall not be effective until they are so
reviewed and approved, and executed by the parties in accordance with
subsection XI(a) above.

XII. MISCELLANEOUS

    (a)  This Agreement shall be binding upon and shall inure to the
benefit of any transferees, successors or assigns of the Board of
Education.  This Agreement may not be assigned by the Principal under any
circumstances.

    (b)  This Agreement is entered into solely for the benefit of the
parties hereto, and any transferees, successors or assigns of the Board
pursuant to subsection XII (a) above.  This Agreement is not intended to

8

(2/26/97)

97-0226-RS10

confer any rights or impose any duties on any third party, and is not intended to expand the liability of any party hereto to any third party.

(c)  The Rules, Policies and Procedures of the Board of Education promulgated to date and during the term of this Agreement are hereby incorporated by this reference, except to the extent such Rules, Policies or Procedures are inconsistent with the terms and conditions of this Agreement, in which event the terms and conditions of this Agreement shall control.

(d)  The waiver by any party of a breach of any provision of this Agreement by another party, or the failure of any party to enforce any provision or obligation hereunder, shall not operate or be construed as a waiver of any subsequent breach by that party or bar the subsequent enforcement of any provision or obligation under this Agreement.

_Shirley J. Stoddard_
Principal                           Dated: _October 28, 1998_

Board of Education
of the City of Chicago

By:_____           Dated:_____
        Its President

Attest:_____
            Secretary


_South Loop School_    Local School Council

By: _Sheri L. Gamut_                 Dated: _10-28-98_
        Its President

Attest:_____
            Secretary

(2/26/57)

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned Shirley Woodard certifies that the statements set forth in this Complaint are true and correct.

_Shirley Woodard_
Shirley Woodard

Subscribed and Sworn before me
this 20th day of January, 2000.

_Kathleen Dulewicz_
NOTARY PUBLIC

"OFFICIAL SEAL"
KATHLEEN DULEWICZ
Notary Public, State of Illinois
My Commission Expires July 26, 2000

Denise M. Mercherson
330 S. Wells
Suite 1020
Chicago, Illinois 60606
331/922-1446

I, Shirley W___rd, acknowledge receipt of this letter today, _____
                                                            Tod__/ Date

_____
Signature

# CPS

**CHICAGO PUBLIC SCHOOLS • 125 S. CLARK STREET, 10th floor • CHICAGO, ILLINOIS 60603**

**Dr. Blondean Y. Davis**
Chief of Schools and Regions
773/553-2150
FAX: 773/553-2151

January 27, 2000

Shirley Woodard
1518 East 69th Street, 1 East
Chicago, Illinois 60637

Dear Ms. Woodard:

Be advised that effective, Wednesday, January 26, 2000, you will be temporarily reassigned from South Loop Elementary to the Office of Schools and Regions, 10th floor, 125 South Clark, pending the results of an investigation. Mr. Adrian Beverly will be available to provide further clarification and to address your concerns.

Sincerely,

*Blondean Y. Davis*

Blondean Y. Davis

C:  Margaret Kostopulas
    Marilyn Johnson
    Dr. Hazel Steward
    Carlos Ponce
    Thomas Sherry

**EXHIBIT**

**B**

*Children First*

Feb-07-00 11:19am From-                                            T-980  P.03/04  F-035



## Board of Education of the City of Chicago
### Law Department

Marilyn F. Johnson
Attorney

PLEASE RESPOND TO:
P. O. BOX 2976
CHICAGO, ILLINOIS 60790

120 South Clark Street
Suite 700
Chicago, Illinois 60603
telephone 773/553-1700
FAX 773/553-1702

February 4, 2000

**VIA FACSIMILE TRANSMISSION**
(312) 263-2012

Mr. William J. Quinlan
Attorney at Law
155 North Michigan Avenue
Suite 700
Chicago, Illinois 60601

    Re:   **Shirley Woodard**

Dear Mr. Quinlan:

    I have made inquiries, pursuant to your request, to determine whether Shirley Woodard is being paid appropriately and receiving medical benefits while on her duty leave of absence. My inquiries have uncovered the following information.

    Ms. Woodard was placed on a duty disability leave of absence effective December 10, 1999, due to her alleged injury that occurred on December 6, 1999. When an employee is placed on a duty disability leave of absence, they are offered the choice of either: (1) using their accrued sick days so that they can receive full pay while on leave, and, then, have two-thirds of those sick days reimbursed upon returning to work; or (2) merely getting paid two-thirds of their pay with no loss of sick days.

    Ms. Woodard had conversations with Resynda Jackson, claims adjuster for Martin Boyer Company, on December 27, 1999, and, again, on January 4, 2000. During these conversations, Ms. Jackson fully explained to Ms. Woodard the options available to her. On January 4th, Ms. Woodard notified Ms. Jackson that she wanted to receive full pay and use her sick days. Accordingly, when Ms. Woodard's duty disability leave of absence ends, she will have two-thirds of her sick days restored to her.

    The fact that Ms. Woodard had elected to use her sick days to receive full pay on January 4th, is contrary to the allegations raised by Ms. Woodard at our February 1st meeting that the



**EXHIBIT**

C

Board had somehow surreptitiously forced Ms. Woodard to use her sick days. To the contrary, Ms. Woodard, herself, elected this procedure nearly a month before our meeting took place. If for some reason Ms. Woodard wants to change her mind and elect to receive two-thirds pay with no loss of sick days, then please let me know immediately.

I have also been informed that Ms. Woodard's medical benefits have continued uninterrupted from December 10, 1999, to the present. Ms. Woodard's is only obligated to continue to pay the percentage of premium deductions for medical benefits, which had been ordinarily deducted from her pay check.

Today, I have also discovered that Ms. Woodard submitted a "Work Status Discharge Sheet" indicating that she may perform full duty work as of Monday, February 7, 2000, with no restrictions. For the time being, Ms. Woodard is not to report back to South Loop. Instead, Ms. Woodard is directed to stay at home until further notice. As of February 7, 2000, pursuant to Ms. Woodard's medical documentation, she will be removed from duty disability leave and treated as if she is back to work.

Please contact me, at (773) 553-1643, if you have any questions in these matters.

Very truly yours,

JAMES G. CIESIL
Senior Assistant Attorney

JGC:abm
cc: Client

2

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Shirley Woodard

## DEFENDANTS

Chicago Board of Education
and Larry Young

00C 5515

DOCKETED
SEP 11 2000

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Cook
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

JUDGE JOHN NGOH

MAGISTRATE JUDGE ROSEMOND

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Denise M. Mercherson
330 South Wells, Suite 1020
Chicago, Illinois 60606 312/922-1446

ATTORNEYS (IF KNOWN)

Marilyn Johnson, Attorney
Chicago Board of Education
Chicago, Illinois 60603

FILED
SEP 1

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
  **HABEAS CORPUS:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. Sec 1983 and Fourteenth Amendment

## VII. REQUESTED IN COMPLAINT

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

## VIII. This case

☒ is not a refiling of a previously dismissed action.

☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE  9/7/00

SIGNATURE OF ATTORNEY OF RECORD  Denise M. Mercherson

UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

**00C 5515**

In the Matter of

**JUDGE JOHN W DARRAH**

Shirley Woodard  v.  Chicago Board of Education and Larry Young

Case Number:

**MAGISTRATE JUDGE ROSEMOND**

FILED-EO4
00 SEP -7 PM 4:11
CLERK
U.S. DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Plaintiff, Shirley Woodard

**DOCKETED**
SEP 11 2000

| (A) | (B) |
|---|---|
| SIGNATURE *Denise M. Mercherson* | SIGNATURE |
| NAME Denise M. Mercherson | NAME |
| FIRM Law Office of Denise M. Mercherson | FIRM |
| STREET ADDRESS 330 South Wells, Suite 1020 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60606 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 312/922-1446 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6194061 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?    YES ☒    NO ☐ | MEMBER OF TRIAL BAR?    YES ☐    NO ☐ |
| TRIAL ATTORNEY?    YES ☒    NO ☐ | TRIAL ATTORNEY?    YES ☐    NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL?    YES ☐    NO ☐ |
| **(C)** | **(D)** |
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?    YES ☐    NO ☐ | MEMBER OF TRIAL BAR?    YES ☐    NO ☐ |
| TRIAL ATTORNEY?    YES ☐    NO ☐ | TRIAL ATTORNEY?    YES ☐    NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?    YES ☐    NO ☐ | DESIGNATED AS LOCAL COUNSEL?    YES ☐    NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.